## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**SABRINA L.R.,**

      **Plaintiff,**

      **v.**                             **Case No. 21-CV-1147-JAR**

**KILOLO KIJAKAZI, Acting Commissioner of
Social Security,**

      **Defendant.**

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Acting

Commissioner of Social Security denying Plaintiff's application for disability and disability

insurance benefits under Title II and supplemental security income benefits under Title XVI of

the Social Security Act.  Plaintiff asserts that the Administrative Law Judge ("ALJ") erred when

she did not include in her residual functional capacity ("RFC") that Plaintiff needed to elevate

her legs and thus the RFC is improper.  Because the Court concludes that the Commissioner's

findings are supported by substantial evidence, the Court affirms the Commissioner's decision.

## I.      Procedural History

On June 27, 2019, Plaintiff protectively applied for a period of disability, disability

insurance benefits, and supplemental social security income benefits.  She alleged a disability

onset date of January 1, 2017.  Plaintiff's applications were denied initially and upon

reconsideration.  She then asked for a hearing before an ALJ.

After a hearing on August 19, 2020, the ALJ issued a written decision on November 27,

2020, finding that Plaintiff was not disabled.  Given the unfavorable result, Plaintiff requested

reconsideration of the ALJ's decision from the Appeals Council.  Plaintiff's request for review

was denied on April 5, 2021.  Accordingly, the ALJ's November 2020 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and the grant of her requested social security benefits. Alternatively, she seeks reversal and remand for a new administrative hearing.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[1]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[3]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(a).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

Pursuant to the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe impairment, or combination of severe impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8]  "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's RFC, which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10]  The claimant bears the burden in steps one through four to prove a

---

[5] *Id*. § 423(d)(2)(A).

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7] *Barkley v. Astrue*, Case 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); and then quoting *Williams v. Brown*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

disability that prevents performance of her past relevant work.[11]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had engaged in substantial gainful activity between January 1, 2017, and August 25, 2017, but not after that time.  She determined at step two that Plaintiff had the following severe impairments: obesity; lymphedema; left knee chondromalacia patellae and subluxation status post arthroscopy; right knee degenerative changes; ORIF changes in the left ankle, with internal fixation of medial and lateral malleolus fractures; migraines; agoraphobia; panic disorder; generalized anxiety disorder ("GAD"); bipolar disorder; major depressive disorder ("MDD"); dysthymic disorder; and peripheral arterial disease ("PAD").  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  Continuing, she determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently, can stand or walk in combination for 2 hours in an 8-hour workday, and can sit for 6 hours in an 8-hour workday with normal breaks. The individual can occasionally climb ramps and stairs; may not climb ladders, ropes and scaffolds; can frequently balance; and occasionally stoop, kneel, crouch and crawl. The claimant can occasionally operate foot controls bilaterally, but must avoid more than occasional exposure to extreme cold/heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and can have no exposure to hazards such as unprotected heights and machinery with moving mechanical parts. She can understand, remember and perform simple and intermediate instructions and tasks in nonpublic settings, can occasionally interact with coworkers, supervisors and the general public, and can adapt to

---

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

[12] *Id*. (quoting *Hackett*, 395 F.3d at 1171).

changes in the work setting, which are consistent with the aforementioned limitations.  Intermediate is defined as more than simple and less than complex.[13]

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work.  After considering Plaintiff's age, education, work experience, and RFC, she determined at step five that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  Thus, the ALJ concluded that Plaintiff had not been under a disability from January 1, 2017, through the date of her decision.

## IV.    Discussion

Plaintiff asserts one error in the ALJ's decision.  She contends that the ALJ erred in not including a limitation in the RFC to elevate her legs throughout the workday.  Plaintiff contends that she testified that she elevated her legs three to four times a day.  In addition, Plaintiff asserts that the ALJ acknowledged that a PA-C[14] recommended Plaintiff to elevate her legs but the ALJ discounted that recommendation.  Thus, Plaintiff contends that it was error to not include elevation of her legs in the RFC.  Defendant contends that the ALJ's RFC is supported by substantial evidence because the ALJ thoroughly reviewed the record and concluded that Plaintiff could perform a range of sedentary work.

As to the medical evidence, several regulations govern the ALJ's review.[15]  When evaluating medical opinions, these regulations provide that the agency will consider certain factors, including the supportability, consistency, relationship with the claimant, physician's

---

[13] Doc. 13-3 at 30.

[14] A PA-C is a certified physician's assistant.

[15] *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Claims filed after March 27, 2017, are governed by these regulations.  *See Bills v. Comm'r, SSA*, 748 F. App'x 835, 838 n.1 (10th Cir. 2018) (noting the revised regulations apply to claims filed on or after March 27, 2017).

specialization, and other factors.[16]  The most important factors in evaluating the persuasiveness

of a medical opinion or prior administrative medical finding are supportability and consistency.[17]

Under the supportability factor, "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support [the] medical opinion(s) or

prior administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be."[18]  As to the consistency factor, "[t]he more consistent

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

or prior administrative medical finding(s) will be."[19]

        Here, with regard for Plaintiff's need to elevate her legs throughout the day, there was

one recommendation in the medical records by a PA-C on July 7, 2017.  This recommendation

simply stated, "keep feet elevated."  There are no specifics as to the duration, to what degree, or

how often.  There are no specifics as to the length of time, i.e, for a few weeks or for an

indefinite period.  The ALJ stated that the PA-C's opinion was of limited persuasive value

because other medical evidence of record did not support the recommendation to elevate

Plaintiff's legs, and the edema findings varied throughout the record.  In addition, the ALJ noted

that even though the PA-C recommended Plaintiff to elevate her legs, "there is no indication that

elevation could not be accomplished during breaks, and before and after work."[20]  Thus, even

though the ALJ's dismissal of the PA-C's medical opinion was brief, she adequately addressed

---

[16] 20 C.F.R. § 404.1520c(a), (c)(1)–(5).

[17] *Id.* § 404.1520c(a).

[18] *Id.* § 404.1520c(c)(1).

[19] *Id.* § 404.1520c(c)(2).

[20] Doc. 13-3 at 37.

its supportability, its consistency with the rest of the medical record, and a method for which Plaintiff could still elevate her legs throughout the day.

Plaintiff argues that there is no requirement that multiple providers must recommend that she elevate her legs for the PA-C's opinion to be persuasive. Although that contention may be true, the fact that there were no other medical providers making that recommendation, or any other medical records providing for that limitation, demonstrates a lack of supportability and consistency. It is the ALJ's job to weigh the evidence. Accordingly, the ALJ could find that the PA-C's opinion had limited persuasive value because no other medical evidence supported the recommendation for Plaintiff to elevate her legs, and she adequately set forth this reason.

To the extent Plaintiff asserts that the ALJ should have set forth more reasons for discounting Plaintiff's testimony that she needed to elevate her legs above her heart multiple times a day on the advice of her physicians, credibility is for the ALJ to determine.

> The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints. Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.[21]

An ALJ's credibility determination is generally treated as binding upon review.[22] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[23]

Here, Plaintiff testified she needed to elevate her legs three or four times a day. The ALJ found that Plaintiff's statements about the limiting effects of her symptoms were inconsistent

---

[21] *Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009) (citations omitted).

[22] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (citing *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)).

[23] *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

because she continued to be physically active.  She noted that Plaintiff was advised by a PA-C to elevate her feet, but she also noted that the PA-C's opinion was of limited value.  The ALJ also noted that treatment notes in 2018 indicated that Plaintiff's lymphedema was stable, and that Plaintiff participated in physical therapy for her lymphedema in February and March 2020.

Plaintiff testified that several doctors, Drs. Woolard and Kelsey, recommended that she elevate her legs.  Plaintiff may have testified to this fact during the administrative hearing, but she does not direct the Court to any specific medical evidence demonstrating that these doctors made this recommendation.  Plaintiff references Dr. Woolard's records in her briefing, but she does not reference Dr. Kelsey's records.  In reviewing Dr. Woolard's records, it shows that he recommended compression stockings, but there is no recommendation for elevating Plaintiff's legs.  There are no specific references by either party to Dr. Kelsey's medical records or recommendations.  Thus, the medical records do not support Plaintiff's contention that these doctors recommended elevation of her legs, and the ALJ could weigh Plaintiff's testimony accordingly.

Furthermore, as discussed above, the ALJ did not completely discount Plaintiff's claim that she needed to elevate her legs several times a day because she stated that Plaintiff could elevate her legs during breaks and both prior to and after work.  The ALJ simply did not include the need to elevate her legs in Plaintiff's RFC.  Plaintiff is asking the Court to reweigh the evidence which the Court cannot do.

Finally, Plaintiff relies on several cases for the proposition that a remand is warranted in this case.  The cases that Plaintiff relies upon, however, involve different facts.  For example, in *Breitkretuz v. Berryhill*,[24] a medical source opined on two separate occasions that the claimant

---

[24] No. 17-1261-SAC, 2018 WL 4184930 (D. Kan. Aug. 31, 2018).

needed to elevate her legs 50 percent of the day at a 50-degree angle.[25]  The ALJ discounted the opinion stating that it was not supported by treatment notes.[26]  Upon review, the court found that the opinion was supported with specific treatment notes and thus it was error to discount the opinion on the basis that it was unsupported.[27]  Thus, not only were there two specific recommendations for the plaintiff to elevate her legs, the recommendation was also supported with treatment notes that the ALJ failed to consider.  The court found it necessary to remand the case for the ALJ to consider those records to determine whether the medical support for this proposition would change the RFC.[28]  Those circumstances are not present here.

In *Cianciolo v. Berryhill*,[29] the Appeals Council specifically remanded the case to the ALJ to consider whether the medical evidence supported the claimant's need to elevate his legs.[30]  In addition, there were multiple medical opinions stating that the claimant needed to elevate his legs.[31]  There was one medical opinion in the record that the claimant should elevate his legs "as much as possible," that it was "very important" to keep his legs elevated, and that the claimant should elevate his legs above his heart.[32]  There was a second medical opinion recommending that the claimant elevate his bilateral extremities for one hour every four hours.[33]  The court remanded the case due to procedural errors because the ALJ failed to discuss the

---

[25] *Id.* at *2–3.

[26] *Id.* at *3.

[27] *Id.*

[28] *Id.*

[29] No. 17-1084-JTM, 2018 WL 348173 (D. Kan. Jan. 10, 2018).

[30] *Id.* at *3.

[31] *Id.*

[32] *Id.*

[33] *Id.*

second medical opinion in conjunction with the first opinion.[34]  Again, those facts are not present in this case.  There are no medical opinions or records supporting Plaintiff's need to elevate her legs that the ALJ failed to consider or discuss.  Instead, the ALJ considered the PA-C's opinion and found that it had little persuasive value because other medical evidence of record did not show a recommendation to elevate.[35]

Furthermore, Plaintiff acknowledges that this Court previously found that an ALJ did not err in excluding the need to elevate legs from an RFC in *Stinson v. Barnhart*.[36]  In *Stinson*, this Court found that there was no evidence in the medical records to support the plaintiff's allegations that her doctors instructed her to elevate her legs.[37]  Thus, the Court found that the ALJ did not need to discuss the evidence or include the limitation in the RFC.[38]  Plaintiff asserts that the case currently before the Court is more like the *Breitkreutz* and *Cianciol*o than *Stinson*. The Court disagrees and finds the circumstances more similar to *Stinson*.  As noted above, other than the PA-C's non-specific recommendation for Plaintiff to "keep feet elevated," there was no other medical evidence supporting this recommendation.

---

[34] *Id.*

[35] Plaintiff also discusses one other case from the District of Kansas, *Clardy v. Barnhart*, No. 03-2347-JWL, 2004 WL 737486 (D. Kan. Apr. 5, 2004), but the Court finds it even less relevant than *Breitkreutz* and *Cianciolo*.

[36] No. 02-4084-JAR, 2004 WL 1212048, at *7 (D. Kan. May 21, 2004).

[37] *Id.*

[38] *Id.*

V.      **Conclusion**

The ALJ's RFC determination is supported by substantial evidence.  Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: July 15, 2022

<div style="margin-left:40%">

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

</div>